*721 OPINION OF THE COURT
Ferris D. Lebous, J.
This is a legal malpractice action. Plaintiffs Joseph N. DiTondo and Caralynn M. DiTondo allege that defendants Frederick J. Meagher, Jr. and Meagher & Meagher committed legal malpractice in an underlying federal case by failing to, among other things, research and advocate the legal proposition that the federal court sitting in diversity should have applied either California or New York’s comparative negligence law, rather than North Carolina’s contributory negligence law.
Defendants Frederick J. Meagher, Jr. and Meagher & Meagher (hereinafter collectively defendant) move for an order pursuant to CPLR 3212 determining that the laws of North Carolina were properly applied in the underlying federal action, on the grounds it was the site of the underlying accident and has the strongest interest in the outcome of the underlying federal litigation.
Plaintiff[1] cross-moves for partial summary judgment for a finding that, had defendant brought the proper facts and law to the attention of the federal court, the federal court would have been constrained to apply California or New York’s comparative negligence rule to the underlying federal case.
Background
I. The Accident
For the limited purposes of this motion, the parties entered into a joint statement of undisputed facts (hereinafter joint statement). On October 27, 2000 plaintiff Joseph DiTondo delivered a truckload of bundled chain link fencing from one National Rent-A-Fence facility in Georgia to another National Rent-A-Fence facility in Raleigh, North Carolina. Upon arrival at the North Carolina facility, plaintiff, a coworker trainee named Ronald R. Smith, and Jeffery L. Treadwell, an employee of National Rent-A-Fence, began to unload the fencing from the truck. According to the joint statement,
“Mr. Treadwell maneuvered a forklift owned by Rent-A-Fence to unload the bundles. Plaintiff alleges he and his co-worker trainee stood on opposite sides of the bundles and attempted to insert pieces of 2x4s as ‘spacers’ between bundles of fencing. The *722 defendants in the underlying action disputed this allegation. While this maneuver was occurring, the bundle on the fork lift slipped and fell upon plaintiff injuring his right arm” (joint statement ¶ 11).
The parties also stipulated that at the time of this accident plaintiff was a resident of New York. Further, the parties stipulated that Mr. Treadwell’s employer, underlying federal defendant National Rent-A-Fence, was a Nevada corporation with its principal place of business located in Mission Hills, California, while conducting business in several states including North Carolina (joint statement ¶ 5).
The joint statement further outlines the loss allocation rules of the states involved here, namely that under the laws of North Carolina contributory negligence is an absolute bar to any recovery in a tort action, while under the laws of California and New York contributory negligence is not a bar to recovery but rather the amount of damages otherwise recoverable is diminished under the theory of comparative negligence (joint statement ¶¶ 15-17).
II. The Underlying Federal Action
A federal action, captioned Joseph N. DiTondo v National Rent-A-Fence, National Business Group, Inc., and National Construction Rentals, was commenced in the United States District Court for the Northern District of New York on January 3, 2003 in which plaintiff sought damages for his personal injuries arising from the aforesaid accident.
This record contains two decisions issued by Chief Judge Scullin presiding over the federal action on which defendant Meagher acted as plaintiff’s counsel. A review of both federal decisions is warranted.
First, Chief Judge Scullin issued a memorandum decision and order dated June 3, 2004 (2004 WL 1242742, 2004 US Dist LEXIS 10128 [ND NY 2004] [Federal Decision No. 1]) which addressed the federal defendants’ motion for summary judgment seeking to dismiss the federal complaint. Initially, Chief Judge Scullin struck plaintiff’s opposition papers submitted by Mr. Meagher because said submission failed to comply with local federal rules, thus leaving the defense motion unopposed. Nevertheless, Chief Judge Scullin noted that the court still had to ascertain whether the moving parties had sustained their burden of proof on the motion (2004 WL 1242742, *1, 2004 US Dist LEXIS 10128, *3).
The federal defendants’ motion for summary judgment was based upon the affirmative defense that contributory negligence *723 barred plaintiffs recovery under North Carolina law. Chief Judge Scullin reviewed the choice of law rules of New York as the forum, state and determined that an interest analysis was warranted. Chief Judge Scullin’s interest analysis recognized and reviewed the loss allocation laws under the principles enunciated in Neumeier v Kuehner (31 NY2d 121 [1972]). Chief Judge Scullin examined the Neumeier principles and found as follows:
“Defendants contend that North Carolina law should apply to this action because North Carolina, as the location of both the injury and of Defendants’ facility, has the greatest number of contacts with this litigation. Defendants argue further that, since contributory negligence is a loss-allocation doctrine, under the Neumeir [sic] analysis, North Carolina’s law applies.
“As Defendants point out, the defense of contributory negligence allocates the losses of an accident between the parties. Furthermore, Defendants are domiciliaries of North Carolina, and Plaintiff’s injuries occurred in North Carolina, further strengthening the contacts with North Carolina. Accordingly, the Court will apply North Carolina law in this case.” (2004 WL 1242742, *2, 2004 US Dist LEXIS 10128, *5-6 [emphasis added].)
Chief Judge Scullin, however, ultimately denied defendants’ summary judgment motion, finding that the federal defendants had not met the “exceptionally high standard that North Carolina courts have announced with respect to resolving issues of contributory negligence at the summary judgment stage” (2004 WL 1242742, *3, 2004 US Dist LEXIS 10128, *8).
Almost one year later, Chief Judge Scullin issued a second memorandum decision and order dated June 22, 2005 (2005 WL 1475648, 2005 US Dist LEXIS 43878 [ND NY 2005] [Federal Decision No. 2]) addressing the federal defendants’ second motion for summary judgment and Mr. Meagher’s motion to withdraw as plaintiffs counsel.[2] Chief Judge Scullin determined, among other things, that “because of Plaintiff’s failure to *724 comply with this Court’s orders, the Court grants Defendants’ motion to preclude Plaintiff from calling a treating physician or expert witness to testify” and “because of Plaintiffs failure to comply with this Court’s orders and failure to identify admissible exhibits, the Court grants Defendants’ motion to preclude Plaintiff from offering any exhibits” (2005 WL 1475648, *2, 2005 US Dist LEXIS 43878, *4, 5).
Chief Judge Scullin, however, denied the defense request to preclude plaintiffs testimony at trial, finding instead that objections to testimony and limiting jury instructions would satisfy defendants’ concerns and thus denied defendants’ motion for summary judgment. With respect to Mr. Meagher’s motion to withdraw, the federal court granted the motion upon plaintiffs representation that he had located another attorney willing to take the case.
III. The Pending Legal Malpractice Action
On May 25, 2006, plaintiff commenced this legal malpractice action alleging Mr. Meagher committed legal malpractice by failing to, among other things, “research and advocate the legal proposition that California and New York law, which have ‘comparative negligence’ law applied rather than North Carolina Law, which had a ‘contributory negligence’ law” (complaint ¶ 25). More specifically, plaintiff argues that due to defendant’s failings the federal court incorrectly made a crucial finding in Federal Decision No. 1 that “[defendants are domiciliaries of North Carolina” (2004 WL 1242742, *2, 2004 US Dist LEXIS 10128, *5 [emphasis added]).
Now, by way of these motions, defendant seeks summary judgment determining that the federal judge properly applied the laws of North Carolina in the underlying federal motion because North Carolina was the situs of the accident and had the strongest interest in the outcome of the underlying federal litigation (CPLR 3212). Plaintiffs cross motion seeks partial summary judgment for a finding that had Mr. Meagher presented the correct facts and applicable case law to the federal court, the federal court would have been constrained to apply either California or New York’s comparative negligence rule in the underlying federal motion.
*725 Discussion
It is well-settled that a plaintiffs burden in a legal malpractice case is a heavy one. To sustain a legal malpractice claim, a plaintiff must prove three elements, namely: (1) proof of the attorney’s negligence; (2) a showing that the negligence was the proximate cause of the plaintiffs loss or injury; and (3) evidence of actual damages (Ehlinger v Ruberti, Girvin & Ferlazzo, 304 AD2d 925, 926 [2003]; Pellegrino v File, 291 AD2d 60, 63 [2002], lv denied 98 NY2d 606 [2002]). To establish causation, a plaintiff must show that he or she would have prevailed in the underlying action or would not have incurred any damages, but for the lawyer’s negligence (Rudolf v Shayne, Dachs, Stanisci, Corker & Sauer, 8 NY3d 438, 442 [2007]). In other words, the plaintiff must first prove the hypothetical outcome of the underlying litigation and, then, the attorney’s liability for malpractice in connection with that litigation (Lindenman v Kreitzer, 7 AD3d 30, 34 [2004]). This burden has been described as meaning that a plaintiff in a legal malpractice action must prove a case within a case.
Here, the hypothetical question presented is whether there would have been a more favorable outcome in Federal Decision No. 1 if Chief Judge Scullin had applied the Neumeier principles to the federal motion involving a plaintiff domiciled in New York, a main defendant domiciled in California, and the situs of the accident in North Carolina. In other words, this court must compare the facts and law before Chief Judge Scullin to the facts and law that, according to plaintiff, could have and should have been before Chief Judge Scullin.
In the first instance, it is well-settled that federal courts sitting in diversity must apply the choice-of-law rules of the state in which they sit. Thus, Chief Judge Scullin, sitting in New York, applied New York’s choice-of-law rules to determine whether the loss allocation law of North Carolina, New York, or California would govern in this case involving loss allocation. In such cases, New York’s choice-of-law rules dictate an “interest analysis” (Neumeier, 31 NY2d 121 [1972]).
The court must start with a review of the parties’ domiciles. It is well-settled that the domicile of a corporation for choice-of-law purposes is the state where it maintains its principal place of business (Weisberg v Layne-New York Co., 132 AD2d 550, 551-552 [1987]; Urlic v Insurance Co. of State of Penn., 259 AD2d 1, 4-5 [1999], lv denied 94 NY2d 763 [2000]; Dorsey v Yantambwe, 276 AD2d 108 [2000], lv denied 96 NY2d 712 *726 [2001]; Elson v Defren, 283 AD2d 109 [2001]). In this court’s view, had Chief Judge Scullin been presented with this law and the fact that the main federal defendant, National Rent-A-Fence, maintained its principal place of business in California, the court would have been constrained to find that National Rent-A-Fence was domiciled in California, and not North Carolina, as determined in Federal Decision No. I.[3] Further, the parties agree that plaintiff was a domiciliary of New York and that the situs of the accident is North Carolina. Consequently, the court finds that the Neumeier analysis should have been applied to a federal plaintiff domiciled in New York, a main federal defendant domiciled in California, not North Carolina, and the situs of the accident in North Carolina.
Turning now to the Neumeier analysis, the parties agree that the first Neumeier rule involving parties domiciled in the same state does not apply to this case.
The second Neumeier rule states that if the tort takes place in the state where one party is domiciled and the law of that state favors the domiciliary, the law of the place of the injury controls loss allocation. Chief Judge Scullin relied upon this rule in reaching his determination, because he believed the law of plaintiff’s domicile (New York) differed from the law of the domicile of the main defendant and situs (North Carolina). Under that scenario Chief Judge Scullin understandably concluded that North Carolina had the greater interest in the case. However, we now know that the main defendant was not domiciled in the same state as the situs as described above. Thus, the court finds defendant’s arguments here regarding the application of the second Neumeier rule to be meritless given that National Rent-A-Fence had a principal place of business in California and should have been deemed a domiciliary of California and not North Carolina.
The third Neumeier rule applies the law of the situs when, as here, the situs of the accident (North Carolina) and the domiciles of the federal plaintiff (New York) and main federal defendant (California) are all different, “[unless] it can be *727 shown that displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants” (Neumeier, 31 NY2d at 128).
Under the third Neumeier rule proviso, plaintiff argues that when the law of the domiciles is essentially the same as here (both New York and California have comparative negligence rules) and only the law of the situs is different (North Carolina has contributory negligence), courts prefer to apply the law of the domiciles because the situs state would have “no interest in the application of its [loss allocation law] in an action between nondomiciliaries” (Morillo v Benjamin Moore & Co., 32 AD3d 1313, 1314 [2006]; King v Car Rentals, Inc., 29 AD3d 205, 209-210 [2006]). This court agrees and finds that had defendant Meagher brought to the federal court’s attention the correct facts and law as set forth herein, then Chief Judge Scullin would have been constrained to find that California or New York’s comparative negligence rules applied.
In view of the foregoing, the court finds “but for defendants] alleged negligence, there would have been a more favorable outcome in the underlying action” (Ellsworth v Foley, 24 AD3d 1239 [2005], lv denied 6 NY3d 712 [2006]; Williams v Kublick, 302 AD2d 961 [2003]).
Conclusion
Based upon the foregoing, the court finds as follows: (1) defendants’ motion for summary judgment is denied; and (2) plaintiffs’ cross motion for partial summary judgment is granted.

. The term “plaintiff’ will refer solely to Joseph N. DiTondo since the claim of Caralynn M. DiTondo is derivative in nature.

. Federal Decision No. 2 indicates that Chief Judge Scullin conducted a pretrial conference on February 15, 2005 at which time plaintiff was given one day to notify defendants whether his treating physician would testify, defendants were given until March 1, 2005 to file a motion to exclude proof as to damages, and the trial was scheduled for March 21, 2005. On February 21, 2005, Mr. Meagher submitted a request to withdraw. On March 16, 2005, Chief Judge Scullin issued an oral order partially granting defendants’ motion *724 to preclude, denying Mr. Meagher’s request to withdraw, and denying plaintiff’s request for an adjournment of the trial date. At that time, the federal defendants requested time to file a motion to dismiss which was granted with the federal trial adjourned pending resolution of said motion to dismiss. Upon the filing of defendants’ motion, Mr. Meagher again requested to withdraw as counsel.

. This court agrees that the parent corporation (National Construction Rentals) and the parent of the parent corporation (National Business Group, Inc.) were superfluous defendants in that only Mr. Treadwell’s employer, the main federal defendant (National Rent-A-Fenee), needed to be sued under the theory of respondeat superior. Further, this court agrees with plaintiffs statement that the fact that National Rent-A-Fence was incorporated in Nevada has no significance for this choice-of-law analysis (Bersani affidavit, Apr. 1, 2009, ¶ 5).